UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHRISTOPHER MILLER,          )     Case No.  1:04 CV 1965
                               )
         Petitioner,         )     Judge Ann Aldrich
                               )
   vs.                   )     REPORT AND RECOMMENDATION
                               )        OF MAGISTRATE JUDGE
MARGARET BRADSHAW, WARDEN, )
                               )
        Respondent,     )     Magistrate Judge James S. Gallas
                               )

Applicant Christopher Miller (hereinafter "Miller"), a state prisoner, was convicted in the Court of Common Pleas for Cuyahoga County for the crimes of intimidation, aggravated burglary, kidnapping, aggravated robbery, felonious assault and two counts of complicity to rape in Case No. CR-408458.  See *State v. Miller*, 2003 WL 125133, 2003 - Ohio - 164 (Ohio App. 8 Dist.).  He was sentenced to 40 years and from these convictions and sentences  Miller took three appeals.  See *State v. Miller*, 2005 WL 2100578, 2005 - Ohio - 4583 at *1 (Ohio App. 8 Dist.).  These efforts extended the judicial proceedings well into 2006, where his efforts culminated with minor success with respect to sentencing as one of the numerous defendants who challenged their sentences in *In re Ohio Criminal Sentencing Statute Cases*, 109 Ohio St.3d 313, 847 N.E.2d 1174, 2006 - Ohio - 2109 (2006).


While pursuing state legal remedies Miller filed this counseled application for federal habeas corpus relief  under 28 U.S.C. §2254, challenging his convictions on multiple grounds.  Generally, exhaustion of state remedies is a prerequisite and respondent did not concede exhaustion.  However it is now certain that state remedies have been exhausted with respect to Miller's nine grounds and

1:04 CV 1965                                 2

their respective subparts.  For reasons explained, Miller fails to establish a valid basis for federal

habeas relief from his convictions.

*Background:*

        The following findings in the state appellate court decision are presumed correct absent a

showing of "clear and convincing" evidence to rebut them.  See 28 U.S.C. §2254(e)(1); *Joshua v.*

*DeWitt*, 341 F.3d 430, 436 (6th Cir. 2003).

> [¶18] Two men raped and beat [L. B.] after forcing their way into her
> apartment.  They robbed her of a cell phone, her car charger, and her purse.
> Cleveland Heights police charged Miller as a result of their investigation of
> records from [L. B.]'s stolen cell phone.  The investigation led Detective
> Schmitt to Nicole Head, who had received several phone calls made from the
> stolen cell phone by Miller.  From a photo array compiled by Detective
> Schmitt, [L. B.] identified Miller as one of her attackers.
>
> [¶19] Although the scientific evidence confirmed a presence of semen, the
> DNA did not match Miller's.  Further in his statements to police, Miller
> admitted to placing the cell phone in a sewer near his home when he learned
> the police were investigating him in connection with this incident.
>
> [¶36][L. B.] testified Detective Schmitt showed her a photo array consisting
> of six black males.  [L. B.], in the presence of Schmitt and her aunt,
> identified Miller [L. B.] and Schmitt also testified [L. B.] did not see any
> photographs prior to April 30, 2001 and she did not see Miller's arrest photo
> until after his preliminary hearing.
>
> [¶37] Regarding [L. B.]'s ability to view Miller on the night of the incident,
> [L. B.] described Miller as a 5' 10" light brown-toned male with big brown
> eyes wearing either very short hair or a black bandana and a light shirt with
> a gray jacket that appeared to be buttoned up halfway.  The white shirt
> seemed to have circular writing across the front.  [L. B.] first observed Miller
> at the top of the stairs for approximately one minute.  The second time [L. B.]
> saw Miller's face was when he raped her.  [L. B.] stated the light was in front
> of him and was about five feet away.

1:04 CV 1965 3

[¶47] Regarding the offense of intimation, [L. B.] testified that her attacker hit her on the head several times with a gun, threw her against a wall and on the floor, repeatedly raped her, and kicked her in the jaw. He then told her to not call the police.

[¶48] The prosecution pursued two alternative theories of felonious assault. The first version charged that he knowingly caused or attempted to cause physical harm by means of a deadly weapon. the second version charged him with knowingly causing serious physical harm. Miller was found not guilty of having a firearm and claims [L. B.] did not suffer serious physical harm.

[¶50] [L. B.] stated she was hit in the head multiple times with a gun, kicked in the jaw so hard that she could not eat solid food for several weeks, had painful bruises on her arms, leg, and face, and was raped repeatedly by two men. Dr. Marybeth Manning verified bruising and swelling of [L. B.]'s cheekbone and left elbow and tenderness to her lower back. [L. B.] also testified the bruising increased in the days and weeks following the attack.

*Miller*, 2003 WL 125133 at *1-5.


*Analysis:*

**GROUND 1**:          Sixth Amendment.

Supporting Facts:      Petitioner was denied his Sixth Amendment right to counsel when the trial court failed to make an adequate inquiry as to the dissatisfaction of petitioner with court-appointed counsel.

The first ground was presented in the initial direct appeal. See *Miller*, 2003 WL 125133 at

¶¶21-29. Miller states that the attorney originally appointed by the trial court withdrew and another

attorney was appointed. Miller requested a change in counsel because he was not "getting along"

with this court appointed attorney and did not believe this attorney would be fair to him (Traverse,

¶2, ECF #4, and see TR. 18-20). The trial court without further inquiry stated that they would not

appoint counsel again. *Id.* Miller complained that there was inadequate inquiry made by the court

1:04 CV 1965                                                          4

and there was several months between his complaint about counsel's lack of fairness and the trial. Miller further claims, without support, that the appointed attorney "obviously did not want to continue representing petitioner."

The state decision to be examined on collateral review with regard to this ground, through Miller's eighth ground, is from his initial direct appeal.  With regard to this first ground, the state decision began with the statement that an indigent defendant has a right to competent counsel but not a right to counsel of his own choosing and that there is no constitutional right to a "meaningful attorney-client relationship," citing *Thurston v. Maxwell*, 30 Ohio St.2d 92, 93 (1965) and *Morris v. Slappy*, 451 U.S. 1, 13-14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). See *Miller*, 2003 WL 125133 at ¶¶21-29.  Based on state legal precedent the state decision explained that an indigent defendant is entitled to the appointment of substitute counsel only upon a showing of good cause, an actual conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust result.  *Id.* at ¶26.  Further with regard to the breakdown in communications, the court explained  that Miller would need to show that the breakdown was of "such magnitude as to jeopardize the defendant's right to effective assistance of counsel."  The state decision found that Miller had not demonstrated actual conflict of interest to complete breakdown in communication or an irreconcilable conflict which would lead to an apparent unjust result. Further the state decision noted that Miller requested new counsel again on the day of trial.  *Id.* at ¶28.  Miller takes issue with this last statement pointing out that the trial was continued for several months.

1:04 CV 1965                                        5

Federal habeas is "an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Bousley v. U.S.*, 523 U.S. 614, 621, 118 S.Ct.1604, 140 L.Ed.2d 828 (1998), quoting *Reed v. Farley*, 592 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994). For purposes of federal collateral review, all claims adjudicated on their merits by state courts are governed by 28 U.S.C. §2254(d)(1) and (2), which extends the permissible range of federal review of state convictions follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim  - - -
>
> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding (emphasis supplied).

A district court has very restricted Congressionally granted powers for review under 28 U.S.C. §2254(d). See *Williams v. Taylor*, 529 U.S. 362, 402-03, 117 S.Ct. 1495, 146 L.Ed.2d 389 (2000)*; Bell v. Cone*, 535 U.S. 685, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002). The habeas applicant must show either that the state decision was "contrary  to" or an "unreasonable application" of Supreme Court precedent. The phrases "contrary to" and "unreasonable application" are not the same.  Under the "contrary to" standard of review, the state court's decision is "contrary to" clearly established federal law when it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [this] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 1175, 155

1:04 CV 1965                                    6

L.Ed.2d 144 (2003); *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389

(2000); *Mitchell v. Esparza*, 540 U.S. 12, 15, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003).  Under those

circumstances the Supreme Court has held that the federal court on habeas review may grant the

writ.  *Id.*   The phrase "clearly established Federal law" refers to holdings, as opposed to *dicta,* of

the U.S. Supreme Court at the time of the relevant state court decision.  *Lockyer*, 538 U.S. at 71-72,

123 S.Ct. at 1172; *Williams v. Taylor*, 529 U.S. at 412; *Bell v. Cone*, 535 U.S. at 698.


Under the "unreasonable application" standard, "the state court identifies the correct

governing legal rule from [the Supreme] Court's decisions but unreasonably applies that principle

to the facts of the prisoner's case." *Williams*, 529 U.S. at 413; *Wiggins v. Smith*, 539 U.S. 510, 520-

21, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003).  This includes both the state court's refusal to

extend and its unreasonable extension of existing legal principles from Supreme Court precedent

to new contexts.  See *Williams*, 529 U.S. at 407.   The unreasonable application of Supreme Court

precedent must, however,  be "objectively" unreasonable.  *Id.,* 529 U.S. at 409, 120 S.Ct. at 1521;

*Wiggins, supra*, at 520-21.  When the state court has rendered a decision, the federal reviewing court

may not grant the writ in its "independent review of the legal question."  *Lockyer v. Andrade*, 538

U.S. at 75.  When such demonstration is made then no deference is due to the state decision and the

federal court is free to resolve the claim independently. [1]

---

[1]  "Under AEDPA, a federal court may grant habeas relief, as relevant, only if the state court's
"adjudication of [a] claim on the merits ... resulted in a decision that ... involved an unreasonable application" of
the relevant law. When a state court's adjudication of a claim is dependent on an antecedent unreasonable
application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve
the claim without the deference AEDPA otherwise requires. See *Wiggins v. Smith,* 539 U.S. 510, 534, 123 S.Ct.
2527, 156 L.Ed.2d 471 (2003) (performing the analysis required under *Strickland's* second prong without deferring
to the state court's decision because the state court's resolution of *Strickland's* first prong involved an unreasonable

1:04 CV 1965                                      7

The Sixth Amendment provides that: [i]n all criminal prosecutions the accused shall

enjoy the right . . . to have the Assistance of Counsel for his defence. . ."  This has been

judicially construed to require indigent defendants facing incarceration be offered court-

appointed counsel unless the accused intelligently and competently waives that right to counsel.

*Nichols v. U.S.*, 511 U.S. 738, 743, 114 S.Ct. 1921, 1925, 128 L.Ed.2d 745 (1994); *Brewer v.*

*Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1243, 51 L.Ed.2d 424 (1977). That duty was

fulfilled in this matter.


Further, as explained by the Supreme Court:

> The Sixth Amendment provides that a criminal defendant shall have the right to
> 'the assistance of counsel for his defence.'  This right has been accorded . . . , 'not
> for its own sake but because of the effect it has on the ability of the accused to
> receive a fair trial.'  *United States v. Cronic*, 466 U.S. 648, 658, 104 S.Ct. 2039,
> 80 L.Ed.2d 657 (1984).  It follows from this that assistance which is ineffective in
> preserving fairness does not meet the constitutional mandate, see  *Strickland v.*
> *Washington*, 466 U.S. 668, 685-686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); and
> it also follows that defects in assistance that have no probable effect on the trial's
> outcome do not establish a constitutional violation.

 *Mickens v. Taylor*, 535 U.S. 162, 166, 122 S.Ct. 1237, 1240, 152 L.Ed..2d 291 (2002).  "The

appropriate inquiry focuses on adversarial process, not the accused's relationship with his

lawyer."  *U.S. v. Cronic*, 466 U.S. at 657 n. 21; *Wheat v. U.S.*, 486 U.S. 153,159, 108 S.Ct. 1692,

---

application of law); *id*., at 527-529, 123 S.Ct. 2527 (confirming that the state court's ultimate decision to reject the
prisoner's ineffective-assistance-of-counsel claim was based on the first prong and not the second). See also
*Williams, supra,* at 395-397, 120 S.Ct. 1495; *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002)
*(per curiam)* (indicating that § 2254 does not preclude relief if either "the reasoning [or] the result of the state-court
decision contradicts [our cases]")."

*Panetti v. Quarterman,* -U.S. -, 127 S.Ct. 2842, 2858 -2859 (2007)

1:04 CV 1965                                    8

100 L.Ed.2d 140 (1988).  " [T]he essential aim of the Sixth Amendment is to guarantee an

effective advocate rather than insure that defendant will be represented by a lawyer he prefers."

*Wheat*, 486 U.S. at 159, citing *Morris*, 461 U.S. at 13-14.


        What Miller argues is that the trial court failed to make adequate inquiry with regard to

his dissatisfaction with court-appointed counsel.  This is not an unreasonable argument but it is

based on several federal circuit and state court decisions that  have accepted the proposition that

a trial court must make some inquiry into defendant's complaints when there is a request for the

substitution of appointed counsel.  *U.S. v. Jennings*, 945 F.2d 129, 132 (6th Cir. 1991); opinion

clarified 966 F.2d 184 (6th Cir. 1996); *U.S. v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990); *State v.

Pruitt*, 18 Ohio App.3d 50, 57 (1984); *State v. Deal*, 17 Ohio St.2d 17 (1969); *State v. Coleman*,

37 Ohio St.3d 286 (1988). While this duty of inquiry is "hornbook law," **2** and well-established

under federal circuit law, there is no comparable pronouncement by the United States Supreme

Court that would create "clearly established law" for purposes of review under §2254(d).


        Reliance by Miller on these decisions is misplaced because "as dictated by statute [the

reviewing court] may not look to lower federal court decisions in deciding whether the state

decision is contrary to or an unreasonable application of clearly established federal law."  *Doan*

*v. Brigano*, 237 F.3d 722, 729 (6th Cir. 2001) (overruled on other grounds by *Wiggins v. Smith,*

*supra*) (internal quotation marks and citations omitted).  The Supreme Court has recognized only

_____

        2 *Iles*, 906 F.2d at 1130; *Jennings*, 945 F.2d at 132, both referring to LaFave and  Israel, *Criminal Procedure*, §11.4
at 36 (1984).

1:04 CV 1965                                        9

a limited duty of inquiry when the trial court fails to recognize a potential conflict of interest

where the court has knowledge or should have known about this conflict.  See *Mickens v. Taylor*,

525 U.S. at 166-67, 122 S.Ct. at 1241; *Holloway v. Arkansas*, 435 U.S. 475, 488, 98 S.Ct. 1173,

55 L.Ed.2d 426 (1978).  Miller did not then or now claim that there was a potential conflict of

interest.  His only claim was essentially an ambiguous dislike of court-appointed counsel.  Miller

has failed to establish error under §2254(d).


        The state decision did apply a correct federal standard from *Morris v. Slappy, supra,* for

the lack of a constitutional requirement for a meaningful relationship between defendant and

counsel.  Reliance on appropriate legal precedent from the Supreme Court triggers the

presumption that "state courts know and follow the law."  See *Woodford v. Visciotti*, 537 U.S.

19, 24, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002).  As the state decision noted, *Morris* holds

that the constitution does not require a "meaningful relationship" between the defendant and

defense counsel.  Miller's complaints about counsel did not rise to evidence of a potential

conflict  of interest between Miller and court-appointed counsel.  Miller has not shown

unreasonable application of clearly established federal law.


                GROUND 2:               Fourteenth Amendment.

                Supporting Facts:       Petitioner was denied due process of law when the
                                        court overruled the suggested (sic, should read
                                        "suggestive") pretrial identification procedure in
                                        which petitioner was identified by impermissible
                                        means.

1:04 CV 1965                                        10

   Miller moved to suppress his identification by the victim from a photo array.  On appeal

the state court applied the standard from *Manson v. Braithwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53

L.Ed.2d 140 (1977) and *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and

concluded that based on the testimony presented by the victim and the officer that conducted the

photo array, the identification was not impermissibly suggestive.  *Miller*, 2003 WL 125133 at

¶¶30-38.  Miller fails to show that the state court decision was in violation of clearly established

federal law or was an unreasonable application of federal law.


   What he does attempt to do, just as he had done in state court, is rely on an error in the

transcript to make the claim that Miller was present with the victim and her aunt when they

reviewed the photo array with Detective Schmitt.  On page 48 of the transcript Detective Schmitt

was asked who was present with him and he reportedly responded, "Christopher Miller, her Aunt

Beth was and myself?"  The State argued there was transcript error so that the question mark

should have followed Christopher Miller's name and that this was clarified in subsequent

testimony that LB, her aunt and the officer were present (TR. 49-50).  The state decision found

that the victim testified that Detective Schmitt showed her a photo array while the victim was

accompanied by her aunt.  Further, the court noted that the victim testified that she did not see

any photographs prior to April 30, 2001 and did not see Miller's arrest photo until after his

preliminary hearing.  *Id.*, ¶36.


   It appears that Miller is attempting to challenge these factual findings.  But 28 U.S.C.

§2254(e)(1) requires that, "a determination of a factual issue made by a State court shall be

1:04 CV 1965                                    11

presumed correct.  The applicant shall have the burden of rebutting the presumption of

correctness by clear and convincing evidence."  Miller has not presented clear and convincing

evidence to show that he was present at the time of the photo array and has further failed to show

that the state decision stands in violation of §2254(d).


                    GROUND 3:              Sixth and Fourteenth Amendments.

                    Supporting Facts:      Petitioner was denied a fair trial and due process of
                                           law when evidence of his past or criminal
                                           involvement was intentionally placed before the
                                           jury by the prosecution.

        Miller claimed due process violation because of one statement made during Detective

Schmitt's direct examination when asked what followed the conversation he had with Nicole

Head.  He responded, "I obtained a computer printout pertaining to the past arrest record of

Christopher Miller."  Objection was lodged and sustained.  (TR. 630-31, Ex. 37).  Miller claimed

that prejudicial evidence of the criminal record was intentionally placed before the jury.  The

state appellate court decision was quite brief.  The state court noted that this was in fact an arrest

record and that arrest does not equate with a conviction and the trial court promptly sustained the

objection, thereby preventing the jury from hearing any specific incidents of alleged criminal

conduct.  Consequently the court found that Miller had not demonstrated that he was prejudiced

by Detective Schmitt's statement.  *Id.* at ¶39.


        The state decision does not identify what legal precedent or standard was used as the

foundation for that decision.  Nonetheless, a deferential standard of review applies which

1:04 CV 1965                                      12

liberally states, "that a state court need not even be aware of all precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003), quoting *Early v. Packer*, 537 U.S. 3, 7-8, 123 S.Ct. 352, 154 L.Ed.2d 263 (2000) (*per curiam*).


        While the ground itself is ambiguous as to the basis of the due process violation, in briefing this issue to the state court, Miller relied on cases addressing due process violations due to prosecutorial misconduct (Assignment of Error p. 15-17, Ex. 8).   In general, there is a prohibition as a matter of due process that, "[t]he state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime." *Michelson v. U.S.*, 335 U.S. 469, 476, 69 S.Ct. 213, 93 L.Ed.168 (1948).  This prohibition is not absolute but the Supreme Court has stressed that even where evidence of prior crimes is admitted for a valid purpose such as establishing recidivism or an element of the crime, it must done with care and within constrained circumstances.  See *Old Chief v. U.S.*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) (felon-in-possession of firearm); *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967) (recidivism).  The remark by Detective Schmitt did not serve to support an element of the crime nor was it a matter properly before the jury. Finally, it was not presented as admissible evidence under any state evidentiary rules.  Further, although the trial court did sustain the objection, there is nothing shown from the record that any cautionary instruction was given to the jury to disregard this statement.

1:04 CV 1965                                    13

Prosecutorial misconduct may be a violation of due process when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *Romano v. Oklahoma*, 512 U.S. 1, 1213, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 480 L.Ed.2d 431 (1974).  However, even when misconduct creates a due process violation, it must be counterbalanced against the harmless error standard. For purposes of federal habeas corpus review violations must be evaluated under the standard from  *Kotteakos v. U.S.*, which requires a demonstration of actual prejudice so that the error "had substantial and injurious effect or influence upon the jury's verdict."  See *Id.*, 228 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1947); *Brecht v. Abrahamson*, 507 U.S. 619, 638-39, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993).

The state decision was a shorthand application of the harmless error standard.  The state appellate court found that Miller could not show that he had been prejudiced because the jury had not heard "specific incidents of alleged criminal conduct" pointing out that no criminal record was mentioned, only the matter of arrest was raised.  *Id.* at ¶39.  Thus the state decision implicitly presumes that there was misconduct, but finds it was harmless, non-prejudicial error.

The question then is whether the state decision was an unreasonable application of Supreme Court precedent from cases such as *Darden* and *Michelson*.  The state decision's rationale is not unprecedented.  For example, in *United States v. Ortiz*, 507 F.3d 1224 (6th Cir. 1974), where an F.B.I. agent had testified to defendant's prior criminal record, the matter was

1:04 CV 1965                                            14

reviewed as to whether or not it resulted in actual prejudice under the *Kotteakos* standard.  *Id.* at 1226.  In the state decision at hand, though, the rationale is so abbreviated that it is impossible to discern what standard of review was being applied.  However, in *Fry v. Pliler*, - U.S. -, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007), the Supreme Court recently held that on collateral review the federal court assesses the prejudicial impact of the state court's constitutional error under the *Brecht* or *Kotteakos* standard of "substantial and injurious effect" rather than the alternative *Chapman* standard of "harmless beyond a reasonable doubt," regardless of whether the state court's  review is under the harmless beyond reasonable doubt  *Chapman* standard.  Compare *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).   Accordingly, the state decision must be read as an application of the "substantial and injurious effect" standard from *Brecht* and *Kotteakos* in the state court's resolution of prosecutorial misconduct.


       The state decision finding no actual prejudice due to the reference to Miller's prior arrest record was not an "unreasonable application" of federal law.  Reasonable jurists in similar situations have found no prejudicial error occurred under the *Kotteakos* standard first as illustrated in *Ortiz, supra* and more recently in *U.S. v. Balderas*, 27 F.3d 567, 1994 WL 144449 (Table 6th Cir. 1994).  *Balderas* involved the jury's exposure to a fingerprint card.  The court, applying the actual prejudice standard, found that "testimony regarding a record or commitment to jail 'only rises to a lesser plateau of prejudice' because such a record or commitment might result merely from arrest, and this 'does not necessarily rise to the level of previous convictions.'" *Balderas* at ¶2.  Just as the state decision stated that the arrest does not equate with conviction, the decision in *Balderas* also reasoned that where extraneous evidence of

1:04 CV 1965                                      15

criminal history is something less than a conviction – the defendant suffers a lesser degree of prejudice than if a jury had become aware of the prior conviction itself.  See *Balderas* at *2. *Balderas* reasoned that the evidence was isolated and ambiguous and did not constitute prejudicial error.  *Id.* at *3.  Likewise, Miller cannot establish that the state court's finding that he did not suffer prejudice as a result of this isolated reference to the prior arrest was an unreasonable application of clearly established federal law.  Further as in *Ortiz* and *Balderas*  the state decision was made following a recitation of the overwhelming evidence of guilt from the victim's pretrial identification of Miller and Miller's possession of the victim's cellphone, together with the victim's testimony of the events involving Miller.   Miller has not established that the state decision stands in violation of §2254(d) as an unreasonable application of clearly established federal law since "reasonable jurists" have similarly resolved arguments of ths type..

GROUND 4:          Sixth and Fourteenth Amendments.

Supporting Facts:     Petitioner was denied a fair trial and his right to present a defense when the prosecutor was permitted to humiliate a defense witness.

The state decision addressed this as the prosecutor humiliating the witness Duane Collins when he asked Collins if he was a convicted felon and a crack addict.  The state decision was that the trial court properly sustained the objection and ordered the witness not to answer and concluded that Miller had not demonstrated this line of questioning denied him a fair trial. *Miller*, 2003 WL 125133 at ¶¶40-41.

1:04 CV 1965                                16

Miller argues that the state decision only partly addressed his arguments and that the witness answered these questions in the affirmative that he was a convicted felon and crack user. Miller also had argued on state appeal that the prosecutor had also asked the witness if he was a convicted thief (TR. 729) and whether he had been in prison (TR. 730).  The witness answered affirmatively to both these questions and then the prosecutor asked, "Why should these good people on the jury believe a crack cocaine thief" (TR. 730) (See Traverse and Assignment of Errors, p. 17, Ex. 8).  Miller was correct.  The state decision fails to completely address the arguments raised.   In such circumstances, the district court has no state court decision before it and must resolve the issue *de novo*. [3]

In the state appeal the prosecution contended that these questions were presented pursuant to Ohio Evid. R. 609, impeachment by evidence of conviction of crime.  Ohio Evid. R. 609(A) is a modified form of its federal counterpart.  It differs in the elimination of judicial discretion on the introduction of prior felony convictions.  Compare Fed. R. Evid. 609(a)(1); and see 23 Ohio Rev. Code, Ohio Evid. R. 609, staff note to Ohio Evid. R. 609(A)(Lexis Nexus 2005).  Even so, under its federal counterpart, impeachment through the use of prior felony drug-related convictions has been held to have high probative value and minimal prejudicial effect. See *U.S. v. Lattner*, 385 F.3d 947, 960-61 (6th Cir. 2004).  Moreover, a different provision governs the admission of evidence involving crimes of dishonesty (Ohio Evid. R. 609(A)(3)) and

_____

[3] See  *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005), *cert. denied*, 126 S.Ct. 1032 (2006); *Moldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005); *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003); *McKenzie v. Smith*, 326 F.3d 721, 726-27 (6th Cir. 2003), *cert. denied*, 540 U.S. 1158 (2004); *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000), *cert. denied*, 532 U.S. 947 (2001); and see *Wiggins v. Smith*, 539 U.S. 510, 534, 123 S.Ct. 2527, 2542, 156 L.Ed.2d 471 (2003).

1:04 CV 1965                                    17

such evidence is admissible without judicial oversight under its federal counterpart Fed. R. Evid.

609(a)(2).


Additionally, the prosecutor's questioning the witness about being a crack cocaine user is

permissible as a means for impeaching credibility of the witness pursuant to Ohio Evid. R.

616(B) and his specific instance of past drug use is probative of truthfulness under Rule 608(B)

or its federal counterpart Rule 608(b).  Since the evidence was admitted, it was properly

admitted under both federal rules and their state counterparts and Miller fails to demonstrate a

specific constitutional violation or prejudicial error, he fails to establish a denial of fair trial.  See

*Amos v. State of Minnesota*, 849 F.2d 1070, 1073-74 (8th Cir. 1989).  Accordingly, Miller has

failed to show us that the state decision was contrary to or an unreasonable application of clearly

established federal law and with respect to the remaining arguments which were not addressed

by the state court, *de novo* review demonstrates that the evidence was properly admitted and

there was no denial of a specific constitutional right.


GROUND 5:            Fourteenth Amendment.

Supporting Facts:    Petitioner was denied due process of law when the
                     prosecutor was allowed to amend the definition of
                     reasonable doubt.  Moreover this error was
                     compounded when the court modified the definition
                     of proof beyond a reasonable doubt.  In addition,
                     petitioner was not given any instructions to the
                     exact date of the offense where he had presented
                     alibi evidence and was allowed to be convicted on
                     evidence that the offense was committed on or
                     about a certain date.

1:04 CV 1965                                    18

The supporting facts reveal that the fifth ground is an amalgam of several state court claims.  The first subclaim regarding the prosecutor being permitted to amend the definition of reasonable doubt refers to an incident which occurred during *voir dire*.  During jury selection a juror stated that she would need to be 100% sure before making a decision (TR. 351, Ex. 36).  The state decision found, "It is clear to us from the transcript that the prosecutor was not defining reasonable doubt  but rather attempting to clarify it for a juror who thought it means "a hundred percent."  *Id.* at ¶42.  The state decision did not handle this matter correctly.  The prosecutor was defining reasonable doubt in attempting to clarify a juror's confusion   The state decision fails to address the argument.

This due process argument is again a matter of alleged prosecutorial misconduct and the state decision makes no effort to examine whether the prosecution's information to this juror constituted a dilution of the "beyond a reasonable doubt" standard.  The exchange between the juror and the prosecutor on the definition of reasonable doubt was as follows:

| | |
|---|---|
| MR. CAHILL: | You understand that is not what beyond a reasonable doubt is.  It is beyond a reasonable doubt.  Not beyond all doubt.  But beyond a reasonable doubt.  In other words, it allows for some doubt because everything in life has some doubt to it except death and taxes. |
| A JUROR: | Are you saying I'm not a reasonable person? |
| MR. CAHILL: | No.  I'm saying you have to be reasonably certain that I've proven my case.  Reasonably certain that I have proved all of the elements of the charges.  Not absolutely one hundred percent certain, but reasonably certain.  Can you do that? |

1:04 CV 1965                                        19

A JUROR:              Yes.

MR. CAHILL:           Reasonably certain that this makes sense to you
                      because that is what this comes down to is using
                      your common sense for the most part.  What makes
                      sense to you when you hear this case.  Anybody
                      else feel differently?  Anybody else going to hold
                      me to one hundred percent?  I'm not going to put a
                      percent on it.  That is not fair to put a percent on it.

                      Reasonable doubt is whatever you determine
                      reasonable doubt to be.  That is why you are doing
                      this.  But you understand it is not beyond all doubt
                      because there is always doubt in all of life's affairs.
                      You will hear that in the definition that the judge
                      read (sic) to you at the end of the case.

(TR. 352-353, Ex. 36).

The proposed jury instruction from 4 Ohio Jury Instructions §403.50 based on Ohio

Revised Code §2901.05(D) reads as follows:

REASONABLE DOUBT IS PRESENT when, after you have carefully
considered and compared all the evidence, you cannot say you are firmly
convinced of the truth of the charge.  Reasonable doubt is a doubt based
on reason and common sense.  Reasonable doubt is not mere possible
doubt, because everything relating to human affairs or depending on moral
evidence is open to some possible or imaginary doubt.  Proof beyond a
reasonable doubt is proof of such character that an ordinary person would
be willing to rely and act upon it in the most important of his own affairs.

The undersigned finds no degrading or dilution of the reasonable doubt standard

constitutionally necessary to support conviction.  As stated long ago by the Supreme Court,

"[t]he evidence upon which a jury is justified in returning a verdict of guilty must be sufficient to

produce a conviction of guilt, to the exclusion of all reasonable doubt.  Attempts to explain the

term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury."

1:04 CV 1965                                        20

*Miles v. U.S.*, 103 U.S. 304, 312, 13 Otto 304, 26 L.Ed. 481 (1880).  Further, the jury was instructed on the definition of reasonable doubt and consequently Miller has not shown a violation of due process.

In his second and third subclaims Miller contends that the trial court lessened the burden of proof when it instructed the jury concerning "proof beyond a reasonable doubt" as . . . proof of such character that an ordinary person would be willing to rely on it and act on it when conducting life's most important affairs.  (TR. 838, Ex. 38), and lapsed in its instruction that did not specify a certain date.  The state decision noted that Miller failed to contemporaneously object to the jury instructions and consequently conducted plain error review  finding that the outcome of the trial would not have been different.  *Id.* at ¶43.

Respondent contends the federal review is foreclosed due to procedural default noted in the state decision.  Respondent relies on the procedural default that arises when the state court rests its decision on plain error review.  Ohio's contemporaneous objection rule is an adequate and independent state ground and a defendant who fails to object waives review of the issue. See *State v. Smith*, 89 Ohio St.3d 323, 731 N.E.2d 645 (2000); *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Williams v. Bagley*, 380 F.3d 932, 967-68 (6th Cir. 2004); *Scott v. Mitchell*, 209 F.3d 854, 866-68 (6th Cir. 2000).  Subsequent plain error review by Ohio state courts does not waive this procedural default.  See *Keith*, 455 F.3d at 673; *Williams*, 300 F.3d at 968-69. *Seymour v. Walker*, 224 F.3d 542, 547 (6th Cir. 2000).  The subsequent unexplained denial of appeal from the Ohio Supreme Court rests on the same procedural ground.  See *Ylst v.*

1:04 CV 1965                                21

*Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Levine v. Torvik*, 986 F.2d
1506, 1527 n. 8 (6th Cir. 1993), *cert. denied*, 509 U.S. 907 (1993) overruled on other grounds in
*Thompson v. Keohane*, 516 U.S. 99 (1995).  Absent cause and prejudice or miscarriage of
justice, the reviewing federal court cannot reach the merits of the claim.  See *Engle v. Isaac*, 456
U.S. 107, 129, 102 S.Ct. 1558, 716 Ed.2d 783 (1982);  *Reed v. Farley*, 512 U.S. 339, 354-55,
114 S.Ct. 2291, 129 L.Ed.2d 277 (1994); *House v. Bell*, - U.S. -, 126 S.Ct. 2064, 2076, 165
L.Ed.2d 1 (2006).  Respondent raised this defense appropriately in the return of writ (Return pg.
16) and Miller did not attempt to counter with a demonstration of cause or prejudice with respect
to the second sub-claim, and he does not raise actual innocence to counter either instance of
procedural default.


        With regard to this third subclaim, however, Miller argues that even assuming there was
no objection, procedural default would not preclude consideration where there is ineffective
assistance of counsel.  Thus Miller appears to assert counsel's ineffectiveness as "cause" to
excuse the lack of contemporaneous objection.  In order for ineffective assistance of counsel to
constitute a "cause" to excuse procedural default, ineffective assistance of counsel must have
been argued separately or presented as a separate basis for reversal related to this claim.  See
*Murray v. Carrier*, 477 U.S. 478, 485 (1986).   As *Murray v. Carrier* illustrates, though,
ineffective assistance of counsel in order to be utilized as "cause" must also be "fairly presented"
to the state courts, which it was not.  Miller had not raised ineffective assistance of defense
counsel on this basis so that claim too cannot constitute "cause."  See *Edwards v. Carpenter*, 529

1:04 CV 1965                                    22

U.S. at 453-54; *Murray*, 477 U.S. at 489. [4]  Hence Miller has no "cause" to excuse his procedural

default due to defense counsel's alleged ineffectiveness.  Consequently, federal review is

foreclosed.

|  |  |
|---|---|
| GROUND 6: | Fourteenth Amendment. |
| Supporting Facts: | Petitioner was denied due process of law when the court did not completely define all of the elements of intimidation.  Moreover, the court did not fully instruct the jury on all of the elements of aggravated burglary that needed to be proven by the prosecution.  In addition, petitioner was allowed to be convinced as an aider and abettor without proof or the necessity of proving a culpable mental state. |

As had occurred with his fifth ground, ground six is also an amalgam of several state

court claims.   Respondent correctly argues that all subclaims have been procedurally defaulted.

The state decision grouped together Miller's claims that numerous instructions were improper

and reviewed them under the state plain error standard due to Miller's failure to

contemporaneously object to the jury instructions.  *Id.*, 2003 WL 125133 ¶43.  Again, Miller

does not provide any basis to excuse procedural default due to "cause" or "prejudice" or actual

innocence.  Consequently, federal collateral review is barred for the same reason addressed

under Ground 5.

---

[4] Miller argued his dissatisfaction with the fairness of court-appointed counsel, failure to object to the introduction of cell phone records and failure to request an instruction of identification, and failure to object to improper prosecutorial argument.  (See Assignments of Error Nos. I and XIII, Ex. 9).

1:04 CV 1965                                   23

GROUND 7:               Fourteenth Amendment.

Supporting Facts:       Petitioner was denied due process of law when he
                        was convicted of the offense where evidence by the
                        prosecution would not prevent a rational factfinder
                        to return a verdict of guilty.

Naturally the evidence presented by the State would not "prevent" the jury from

returning guilty verdicts.  The undersigned knows of no precedent requiring the State to argue

for acquittal to fulfill the demands of due process.  Respondent, though, reads this ground as an

effort to challenge the sufficiency of the evidence.  The United States Supreme Court stated that

a federal tribunal on habeas corpus reviewing the sufficiency of the evidence must evaluate the

evidence in the light most favorable to the prosecution.  *Jackson v. Virginia*, 443 U.S. 307, 319

(1979).  Due Process under the Fourteenth Amendment to the  Constitution prohibits a

conviction of any person except upon proof of guilt beyond a reasonable doubt.  *In re Winship*,

397 U.S. 358, 362-63, 90 S. Ct. 1068, 1071-72,  25 L.Ed.2d 368 (l970).  Application of this due

process principle in habeas corpus proceedings provides that the "applicant is entitled to habeas

corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of

fact could have found proof of guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S.

at 324, 99 S.Ct. at  2791-92.  The federal reviewing court must, "give[] full play to the

responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and

to draw reasonable inferences from basic facts to ultimate facts." *Jackson v.  Virginia*, 443 U.S.

at 3l9, 99 S.Ct. at  2789.  Thus, the test in habeas corpus is "whether after viewing the evidence

in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 3l9,

1:04 CV 1965                                24

99 S.Ct. at 2789 (emphasis in original); *Wright v. West*, 505 U.S. 277, 112 S.Ct. 2482, 120 L.Ed.2d 225, 237 (1992). "Finally, the *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402, 113 S.Ct. 853, 861, 122 L.Ed.2d 203 (1993).

This state decision applied the correct standard of review of the evidence in the light most favorable to the prosecution. As noted earlier in the underlying facts supporting conviction, the state decision found substantial evidence supporting the challenged convictions of intimidation and felonious assault. The facts established according to the record in the state decision that there was sufficient evidence of intimidation because the victim's attacker physically beat her and then told her not to call the police.

The crime of intimidation under Ohio Rev. Code §2921.04(A) merely requires proof of knowing attempt to intimidate or hinder a victim of a crime in filing or prosecuting criminal charges. Viewed in the light most favorable to the prosecution, Miller has not shown that the state decision finding sufficient evidence was an unreasonable application of the facts.

With respect to felonious assault, the jury did find that Miller was not guilty of having a firearm but felonious assault can also be established by serious physical harm. Miller contends that there is no evidence to prove serious physical harm. However as the state decision pointed

1:04 CV 1965                                      25

out, the evidence established that the victim was hit in the head multiple times with a gun, kicked in the jaw so hard that she could not eat solid food for several weeks, had painful bruises on her arms, legs and face and was raped repeatedly by two men.  Further a physician verified the bruising and swelling of the victim's cheekbone, left elbow and tenderness to her lower back and the victim testified that her bruising increased in the days and weeks following the attack.  As the state decision noted, the definition of serious physical harm under Ohio Rev. Code §2901.01(A)(5)(e) "involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."  The state decision viewed this evidence in the light most favorable to the prosecution as establishing the elements necessary to convict Miller for the offenses of intimidation and felonious assault.  Miller has not shown that this decision was an unreasonable application of clearly established federal law nor an unreasonable determination of the facts as required pursuant to §2254(e)(1).

> GROUND 8:           Sixth Amendment.
>
> Supporting Facts:   Petitioner was denied effective assistance of trial
>                     counsel where through errors and omissions his
>                     right to a fair trial had been prejudiced.

As presented, the claim is unintelligible but respondent argues that this ground is based on the thirteenth assignment of error from the initial direct appeal and within the twelfth proposition of law to the Ohio Supreme Court's review.  On direct appeal Miller presented three instances of alleged ineffective assistance of counsel: (1) that counsel was ineffective in failing to object to the introduction of the victim's cell phone records; (2) that counsel was ineffective in failing to request jury instruction on identification; and (3) that counsel was ineffective in failing

1:04 CV 1965                                      26

to object to allegedly improper prosecutorial closing argument.  See Assignment of Error XIII, p. 27-29, Ex. 8.

The state decision on this issue applied the two-prong test from *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  However, the decision apparently presumed there had been ineffective assistance of counsel and proceeded directly to the issue of prejudice finding, "In light of the overwhelming evidence introduced against Miller, the outcome of the trial would not have been different even if his counsel performed differently."  *Id.*, 2003 WL 125133 ¶¶52-56.

The prejudice prong of *Strickland* requires a demonstration that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*, 466 U.S. at 687-88.  Miller must demonstrate that the state court decision finding trial counsel's performance was not prejudicial was an "objectively unreasonable" application of clearly established federal law.  See *Rompilla v. Beard*, 545 U.S. 374, 380, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005); *Wiggins v. Smith*, 539 U.S. at 520-21.

Respondent explains that the cell phone records at issue were provided to the police by the victim who authenticated the records at trial as being records she received for her cell phone (TR. 510-12, Ex. 37).  Further, respondent argues that the failure to request a jury instruction on identification would not have altered the outcome of the trial given the victim's testimony

1:04 CV 1965                                27

identifying Miller as one of her attackers and finally the closing argument remark highlighted the

fact that Denise King identified Miller in one of her police statements as being the person who

gave her the phone charger found in his apartment did not testify to trial to that point.

Respondent argues that that remark standing alone and viewed in the context of all the remaining

evidence cannot seriously question as being capable of having altered the outcome of the case.

Based on the overwhelming evidence of guilt, the state decision finding no prejudice due to

defense counsel's deficient performance was not an unreasonable application of clearly

established law under §2254(d).

|  |  |
|---|---|
| GROUND 9: | Fourteenth Amendment. |
| Supporting Facts: | Petitioner was denied due process of law and a fair trial where exculpatory information was suppressed by the prosecution. |

     This argument was not presented in direct appeal, but as a lone claim in Miller's motion

for new trial/post conviction relief.  The court of appeals held that the evidence suppressed by

the state consisted of two witness statements given to the police the day after the attack on the

victim which were not materially exculpatory and the State's failure to produce those statements

did not deprive defendant of the right to fair trial.  See *State v. Miller*, 2003 WL 21028362, 2003

- Ohio - 2320 (Ohio App. 8 Dist.).


     These statement were examined in the state decision and Miller's Fourteenth Amendment

claim was reviewed under federal standards from *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct.

1:04 CV 1965                                    28

1194, 10 L.Ed.2d 215 (1963) and *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87

L.Ed.2d 481 (1985).  See *Miller*, 2003 WL 21028362 at ¶5-6.


     The state court decision did refer to an appropriate decisional basis (*Brady v. Maryland*)

from the Supreme Court which is sufficient to trigger a presumption that "state courts know and

follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 360, 154 L.Ed.2d 279

(2002).  "§2254(d) requires that 'state court decisions to be given the benefit of the doubt.'".

*Holland v. Jackson*, 542 U.S. 649, 654, 124 S.Ct. 2736, 2739, 159 L.Ed.2d 683 (2004), quoting

*Visciotti*, U.S. at 24, S.Ct. at 360. Accordingly, since the state decision acknowledged the correct

factors for adjudicating this claim, Ayers must show an unreasonable application of clearly

established federal law.


     "[S]uppression by the prosecution of evidence favorable to an accused upon request

violates due process where the evidence is material either to guilt or punishment, irrespective of

the good faith of the prosecution."  *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10

L.Ed.2d 215 (1963).  See also, *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87

L.Ed.2d 481 (1985).   In *Brady*, the duty on the part of the prosecution to disclose material

evidence whether or not requested by the defense is emphasized.  This includes both exculpatory

and impeachment evidence.  *United States v. Bagley*, 473 U.S. 667, 676 (1985).  Thus, evidence

is material "if there is a reasonable probability that, had the evidence been disclosed to the

defense, the result of the proceeding would have been different."  *Kyles v. Whitley*, 514 U.S. 419,

1:04 CV 1965                                    29

433-434 (1995).  The prosecutor has an affirmative duty to disclose any favorable evidence that

may be known by anyone working on the case for the government, including police and

investigators.  *Id.* at 437.

       There are three components for petitioner to establish a *Brady* violation:

          1) the evidence at issue must be favorable to the accused, either because it
          is exculpatory, or because it is impeaching;

          2) the evidence must have been suppressed by the State, either willfully or
          inadvertently; and

          3) prejudice must have ensued.

       In order to obtain relief for a *Brady* violation, a petitioner must satisfy all three

requirements.  *Strickler v. Green*, 527 U.S. 263, 263-264 (1999).

       The state decision finds that these statements were not exculpatory.  *Miller* at ¶12.  In

reaching this conclusion the state decision reasoned:

          [¶9] Defendant claims that Llewellyn's and Feinberg's statements to the
          police amounted to exculpatory evidence which should have been
          provided to the defense by the State.  He claims that their statements
          demonstrate the inconsistency of the victim's statements immediately
          following the attack and her suspicion that her ex-husband was involved
          in the attack.  We are not persuaded that there is a reasonable probability
          that the outcome of the trial would have been different had Llewellyn's
          and Feinberg's statements been provided to the defense.  First, the
          victim's statements to Llewellyn and Feinberg regarding the identity of

1:04 CV 1965                                         30

her assailants, minutes after she had been raped and beaten, were not inconsistent with her trial testimony. The victim, while very upset, told the witnesses that there were two black males, but then stated that she could only identify one of them as black. Her trial testimony was essentially the same, in that she stated that she did not get a good look at the second male because he was in the background and her face was turned and then covered with a dish towel.

[¶10] Also, we are not persuaded that Feinberg's statement that he did not hear any loud noises in the hallway had any exculpatory value. The victim testified that the initial attack occurred in the rear stairs of the building, not in the hallway. The victim also testified that once inside her apartment, she was threatened with a gun and told not to make any noise or scream. Accordingly, Feinberg's statement that he had not heard any loud noises that evening would not have impeached the victim's credibility.

[¶11] The strongest argument made by defendant concerns the victim's statement that her ex-husband was somehow involved in the attacks. However, even if such evidence had been potentially useful to the defense, mere speculation that it would have affected the outcome of the trial is an insufficient basis to grant a new trial. Feinberg stated that the victim mentioned her ex-husband several times, but also stated that she said "he couldn't have been involved because he has no black friends." Moreover, Feinberg's interpretation of the victim's statements regarding her ex-husband were speculative and therefore inadmissible.

*Miller* at ¶¶9-11.

Miller had failed to establish that the foregoing reasoning was an unreasonable application of *Brady* and its progeny to the effect that these statements were not exculpatory and had no impeachment value. The §2254(d) threshold has not been crossed.

1:04 CV 1965                                     31

### *CONCLUSION AND RECOMMENDATION*

Following review of the petition and applicable law, Miller has not demonstrated that he is in custody pursuant to judgment of a State court which was the result of a decision that was contrary to or involved the unreasonable application of Federal law as determined by the Supreme Court of the United States or was the result of a decision based on an unreasonable determination of the facts in light of the evidence in the State court proceeding.  See 28 U.S.C. §2254(d)(1) and (2).  There has been no demonstrated need for an evidentiary hearing.  It is recommended that the petitioner's application for habeas corpus be denied.

                                        s/James S. Gallas
                                        _____
                                        United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: August 28, 2007